The appellate court of Illinois has convened. You may be seated. Our first case this morning is 416-0135, and that is Westbrook Apartments v. Fernandez. And for the appellant, we have Mr. Hedinger. Is that correct? That's correct. And for the athlete, we have Mr. Craven. Correct. And is this co-counsel? Yes, Your Honor. All right, thank you. All right, thank you very much. You may proceed, counsel. Thank you. My name is Steve Hedinger, Your Honor. It's my pleas to court. And I'm here to represent the appellant in this matter. This is pulling out of a counterclaim, even though the caption is Westbrook v. Fernandez. It really went to trial and is centered on the counterclaim my client filed for injuries sustained from a flooding event that occurred following some roofing work being done by the landlord, landlord being Westbrook Apartments and Regency Windsor Management, and I'll just refer to them as Westbrook. The facts are pretty simple. In May of 2006, roofing was being done on the building that housed Ms. Fernandez's unit. During the course of that roofing work, a storm blew up. The roofing workers did not properly close up the roof, and so there was, when the rain hit, it flooded in my client's apartment and everything in it, other people's apartments as well. We have brought our action against Westbrook. Three counts were in our amended complaint. There was a negligence count, an unlawful eviction count, and intentional infliction of emotional distress count. Following the rain event that ruined my client's things, there was a series of events for about two weeks during which my client was basically shuffled out of her apartment and locked out and ultimately never went back into the apartment. Those facts form the basis of our intentional infliction count and the unlawful eviction. The negligence count was focused on the rain event itself. So I'd like to start with that, and that has caused some, I think, unnecessary confusion in terms of where the negligence lies. We have identified that, and the allegations of our complaint are that these workers improperly covered the roof and did so negligently, and that negligence injured my client. Fairly straightforward negligence, but Westbrook has taken the position throughout this proceeding that the roofers, a company called Tabor Construction out of Indiana, was an independent contractor and that Westbrook cannot be liable for independent contractors' negligence. And we have cited throughout and included, in fact, a reference to it in our complaint, Section 427 of the Restatement Section of Torts, which we think applies directly to this situation. You don't necessarily need to refer to that Restatement Section itself, though, because the Illinois law dating back into the 1800s follows the same rule, which is that when an owner, property owner, retains or anyone retains an independent contractor to do work and that work has some sort of a dangerous, inherent danger about it, something about it that poses a risk or a special danger to others, then the owner or the principal cannot escape liability simply by... Have you been able to get past that hurdle, though? I believe we have, Your Honor. How so? Exactly which hurdle? I'm sorry. The hurdle that it has to have something inherently dangerous to others. Well, I think that doesn't seem to be something that anyone has really challenged. The trial judge, for instance, ruled at length that here it was pretty clear that everyone knew this storm was coming up and everybody knew that if they didn't get the roof covered, that could cause some serious problems. And then there was also the evidence that the... I don't know if you want to call the person the super, the manager or whatever, somewhat talked to and worked with the roofing company in trying to prepare for that and that there were some actions taken to try to address that. I understand that, and I agree with that. That was evidence that was introduced. But taking these elements one at a time, so the special danger to others, I think, is clearly met because they were all trying to address that special danger. And the reason was that there were... How is a special danger defined? I'm not sure I know of any cases that specifically define it, but certainly by looking at the cases, it appears that it's a risk that's common for whatever the type of work is, that it's just something that will happen if you don't take care. For instance, in the Dinesh case, the court was pretty clear that, look, we all know that if you're using an air sprayer to spray paint, that you're going to have paint splatter and you're going to have overgrip. So that's an inherent danger in doing that kind of work. And so the owner has to take some precautions or make sure that the contractor takes reasonable precautions in addressing that or to avoid that. And actually what the restatement says is the owner is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger. But aren't we looking at work that, when you're engaging in it, that it might have been anticipated as a probable consequence of the work that's being done? So do you think you meet that here? Well, probable consequence, I guess, is some words that Westbrook has highlighted in some of their- Well, that's out of Dinesh, right? It is. That's part of what Dinesh said. But we also have other phrases. And the general rule, I mean, the restatement itself does not say a probable consequence. Van Auken doesn't say a probable consequence. It says where the work is dangerous of itself or is often turned inherently or intrinsically dangerous unless precautions are taken. So it doesn't have to be a probable consequence, except that I will say this. It is a probable consequence of doing roofing work if you don't cover the roof and it rains. And I think everybody has all along here agreed with that. The roof was covered, wasn't it? It was covered negligently. But, I mean, it wasn't like they just left the roof open. They tried to cover it. But it's also admitted by Westbrook that they did that negligently. Now, that admission came- Westbrook admitted that Tabor did it negligently. Correct. Correct. And, again, going with the imputed liability of Section 427, it's Tabor's negligence that we're looking at. Do the lease terms address this situation? Specifically a leaking roof? No. The lease talked about her obligation to insure her property. I can't remember the exact language, but there was a clause in the lease that Westbrook would not be liable for damage to her property. And she was required to take the necessary steps to insure her property or something along those lines. Your Honor, those pleadings and those discussions predated the trial. No, I'm sorry. It was during trial, but they weren't addressed in closing, and the judge never addressed that. And I believe in my closing argument, the point was made that to the extent that that was an attempt to avoid their own negligence, that contract provision is barred by the Illinois statute. So, I guess, yes, there was that provision, but I don't think it was applicable in this situation, that it can relieve the landlord from their own negligence. And in this case, under Ganesh, under Van Auken, under Section 427, it is imputed negligence of their contract. What about the Woodward case where we're talking about they were using a cutting torch that caused a fire, and they talk about inherently dangerous. I just am having difficulty seeing this activity as inherently dangerous. I think when, and again, the cases seemed, you know, Ganesh addressed that. It said that, you know, the inherent danger is not something that has to be an ultra-hazardous activity or anything like that. It just has to be a danger or a risk that is inherent in the activity. Ganesh, you know, spray painting, that's not going to hurt anybody. It's going to do property damage, but it's not, you know, and it's something that doesn't have to happen if you put up the correct, you know, coverings and things like that. But it is an inherent danger if those precautions are not taken. But it seems very logical that if you're spray painting, you have to protect against water. I mean, here you're roofing, and there happens to be a storm coming along. I mean, isn't that different? I don't believe so, Judge. I mean, it seems to me if your roof is uncovered, then it doesn't have any covering on it. By definition, everything is exposed to whatever may come from that storm. We have, for one thing, Dorman agreed that it's common knowledge that you need to cover the roof up to protect from storm events. And second, just in this very case, and as the trial judge indicated, everybody knew the storm was coming, and everybody was trying to cover everything to keep it from happening. Now, what happened... Aren't we dealing with a failure to take reasonable precautions, and didn't we have reasonable precautions taken here? We have admitted negligence. And I guess that's where, at trial, I objected to the testimony about what Mr. Dorman did because... Negligence in the way that they covered, right? It was specifically... At the end of the workday, Tabor negligently failed to cover or otherwise secure the open roof. But it appears that the evidence is that they did cover. They just didn't do a very good job. They did negligently. So they took reasonable precautions, but there was negligence in the way that it was done. Well, I mean, and I guess my point would be it can't be reasonable if it was done negligently. And you're correct that the phrasing of the restatement speaks in terms of the failure to take reasonable precautions. But, you know, it would, in my own view, if it's done negligently, that cannot be considered to be reasonable. A reasonable person would do something negligently. Well, I mean, don't we also have information that they had utilized this method before with success? Apparently. But, you know, again, they had admitted to this negligence, so I wasn't... Who was they? You're talking about Westbrook? Westbrook, yes. So, you know, there was not other evidence that was brought in as to what exactly it was done. All that we really have is what Dorman said he could observe from the ground. He didn't go up there. The judge even said he didn't go up there, and he didn't expect him to go up there. So we don't really know what it was, but there was admission that it was done negligently. If we hadn't had that admission, there might have been a different trial, but, you know, we did have that admission. So we know that whatever they did up there was done negligently. You did mention the Woodward case, and that, I guess, moves into a different argument that both Westbrook has made and that the trial judge at least addressed, and that is the suggestion that this was a collateral negligence on the part of Tabor rather than inherent or a negligence on a point that's inherent. And I think that's the distinguishment of the Woodward case you're talking about. There the trial court specifically held that the work in question did not include an inherent danger of catching a pirate. Now, we may disagree with that just in terms of, you know, wait a minute, it's a cutting torch. But that was the ruling of the trial court. It wasn't challenged on appeal, and that was the assumption of the appellate court as they did the analysis in that case. Here throughout, and in Benesh, and in Van Auken, and in the other cases we've cited, the courts have said, well, you know, this particular danger is just a natural part of the work that you're doing. Van Auken, they were, I believe, demolishing a building. Well, things are going to fall when a building is being demolished, so you need to take steps to guard against that. Benesh painting, you know, as we just discussed, Your Honor, you know, the splatter is a normal part. I would argue that in roofing, you know, because they take these normal steps, everybody knows they would better cover this roof up if it's going to rain. And when they do that negligently, they didn't take the reasonable steps to avoid that. In contrast, I mean, I would suggest to you that the collateral negligence, you know, to put it in the Benesh scenario, if the spray painter had failed to maintain his painting machine and it had backed up and blown up, splatter paid all over that way. Well, that's collateral. That's his negligence. That's not something you would normally expect in that kind of work. For the roofing, I was trying to come up with an example, and I guess what I would suggest is that if, for instance, the roofers had a piece of equipment on the roof that short-circuited due to their failure to maintain it, and that caused a fire, well, you know, that is their negligence, not the negligence that's inherent in the work of doing the roofing. And I think that's the distinguishment with respect to the collateral negligence issue. We've also asked that this court remand for a recalculation of the damages. The trial judge found that my client had proven an unlawful eviction. Constructive eviction, right? Constructive, yes, and I refer to it as constructive unlawful eviction. That's the way it was labeled in the complaint. But to me, constructive is just the manner of the eviction. The fact is it was an unlawful moving of my client from her domicile, from the premises she had rented that she had a lawful right to, and she was forcibly removed from those. Whether we refer to it as constructive or not, it certainly was unlawful. There was never a five-day notice given to her. There was never any real process. In fact, after she was, and again, there was another admission that after the rainfall events, after the rainfall events, the unit was uninhabitable. So she couldn't have moved back in. She didn't move back in. She never moved back in again, as a matter of fact.  Actually, Westbrook at some point dropped their claim for past-due rent, right? They did, yes. You went forward on your counterclaim for the constructive eviction. Correct. And you're seeking property damages for the constructive eviction, correct? Property damage and other damages, correct. What are the other damages? Well, I believe in a trespass case, a plaintiff is entitled to damages for annoyance, for the mental results of the unlawful dispossession of the property. Do you have case law where, with a constructive eviction, there was an award for property damage? We usually were talking about, with constructive eviction, you know, you don't have to pay the rent, or if you had to move and pay the rent somewhere else, we compensate you for that, but for property damage? Well, again, Your Honor, I think the distinction is not between, constructive is just the description of how the eviction was effectuated. Okay, well, do you have that for unlawful eviction, as you've called it? I have to recall what cases I've cited, Your Honor, and whether any of them address that particular issue. Certainly, the basic trespass cases, except the fact, ACC, that damages for unlawfully moving someone off their property or keeping someone from their property can result in those types of damages. Did you file a trespass claim? Well, I believe that's what the unlawful eviction essentially is, Your Honor. We have cited the Griggs v. Roth case, Bond v. Long, defendants in unlawfully evicting someone are liable for all damages incurred. Can you tell me the specific damages that were awarded in these cases that you're referring to? I mean, are we talking about unpaid rent? Are we talking about having to stay somewhere else and being compensated for that rent? I know there was the one case where they were in a, not a trailer park, but an RV park, so to speak, and there was this issue about the deck and whether or not they could take the deck with them, and then they told them, you're out tonight, and their property was stolen because it was left unlocked. But other than that, I can't recall any case that you cited where we're talking about property damages for unlawful constructive eviction. And you're probably right, Your Honor, directly on those points. That Dargis case is probably the closest. You know, the cases do speak, that I have cited, do speak generally about the availability of the damages. It's like any, again, I would distinguish between a tort cause of action versus a contract cause of action. You'd ask about the lease earlier, and, you know, even in this context. So she's saying that this is a, you're saying this is a contract action? No, I'm not. I'm saying the opposite, that this is a tort action in the nature of a trespass that should allow for the recovery of all damages resulting from that unlawful action. And I think the cases generally talk about that those include the emotional injuries, they include any property damages, including diminution of value. In this case, that would include anything that got ruined. And the Stafford v. Catalano, I believe, was a remand to, as I recall, it's been a while since I've looked at the case, but I think it was a remand to calculate the damages on that basis. But the court said that those should be available. We would also point out that the judge's damages assessment, I guess, erred in a number of other ways. Again, the order simply said that she wasn't entitled to any loss. I'm sorry, counsel, you're out of time, but you will have additional time on rebuttal. Thank you. Thank you, Judge. Good morning. May it please the court, counsel. Don Craven on behalf of the Appellees here afternoon as well. Mr. Craven, can I start off with a question for you? Yes, ma'am. Judge Madonia found that the damages were $743 to her for security deposit and rent. But then he offset that against rent owed. A claim that had been dismissed. Right, a claim that had been dismissed. So how did that happen, and is that a correct way to handle that? Because your client withdrew their claim for rent owed. The claim for rent was dismissed. Is that a proper way to handle that? Probably not, given that the claim was dismissed. But I think the proper measure of damages is an offset of rent paid. And she had not paid the May rent. But she couldn't inhabit the property. She couldn't until the 26th. And they put her in a hotel for, which is kind of disputed exactly how long that was, but it sounds to be four or five days. And so she basically had the majority of the month of May, if not the entire month of May, where either she was in the apartment or in the hotel. I know that there were a couple days she stayed with her daughter, but does that sound right? Yes, yes. So there may have been a day or two, either the end of May, perhaps the beginning of June, when she stayed with her daughter. But until the rains came, she was in her apartment, and then she was in a hotel for four or five days thereafter. So I think the set-off should have been she's entitled to the rent that had been paid, but she didn't pay it. So technically wrong, practically correct. So did she pay any rent other than her security deposit? I mean, is that the only payment she ever made? Oh, she paid a partial payment, didn't she, in April? Yes. Thank you. Turning to the claim for the restatement, Section 427, the first question is whether 427 applies. And the second question is, if it applies, was Judge Madonia's findings, in fact, correct? He assumed 427 applies, and I'm not sure that that's correct for many of the reasons that were addressed by Your Honor's earlier questions. 427 pegs a finding of a special danger inherent in or normal to the work to the time of the execution of the contract. Paint blows. Things fall off buildings when you're tearing them down. But a fire from a cutting torch is not a special danger inherent to the nature of the work. A rain happening on the day that you're roofing is not a special danger inherent to the nature of the work contemplated at the time of the execution of the contract. It may be that morning when you hear the weather forecast, but not at the time of the execution of the contract. In the Woodward case, the court found that a fire as a result of the use of a cutting torch is not a special danger inherent to the nature of the work, but that the fire was caused, the manner the cutting torch was used, and the nature of the premises in which it was operated. In other words, you've got to look at what happened at the time of use, not at the time of the fire. The negligence that we're talking about, that Ms. Hernandez talks about in this case, is the negligence of Tabor at the time they put the tarp on the roof. That's the negligence of Tabor, not the negligence of Westbrook, and it can't be attributed. The negligence was in the nature of the way they did the work, not the failure of Westbrook to require that those normal protections be taken. To the contrary... Well, opposing counsel says you all admitted negligence, so that's the end of it. I mean, why are we talking about this? Because you admitted negligence. The admission was that Tabor put the tarp on negligently. That's not an admission that Westbrook should have required that. That's not an admission that Westbrook knew that they did it negligently on the day of the rain. It's simply an admission that, in retrospect, they didn't do it right. Can I ask you a question? She couldn't have sued Tabor, right? Could she have? Because they're in privy with Westbrook. She's not in privy with Tabor. So if she sues Westbrook, Westbrook could third-party in Tabor. And if she gets a verdict against Westbrook, they claim against Tabor, right? Could have, yes. In one of the elements in Vinesh, in the paint case, was that the damages from the paint were foreseeable at the time the contract was entered. And importantly, no steps were taken to prohibit, reduce, stop that damage from taking place. Obviously not the case here. I'm not sure at all that this is a case in which Section 427 applies. But if it does, you heard my question about whether or not they took reasonable steps or reasonable precautions. So if it does apply, did they do that? I think they did everything they reasonably could. The superintendent, the manager, Mr. Dorman, made sure that Tabor was aware of the weather forecast. He recognized the so-called danger from a rain event. He talked to Tabor about it. And he ensured that Tabor quit early and took necessary steps to protect the road. The allegations of the counterclaim itself, and this record keeps talking about, this was back in 06, following a tornado coming through southwest Springfield, where these apartments are located. And Springfield was a city of blue tarps for some time following those events. Covering a roof with a tarp when there's a problem with the roof is an ordinary means of protecting that property from further damage. And that's what Mr. Dorman made sure that Tabor did. He made sure that they put a tarp up to protect against further damages. What he did not do, and what Judge Madonia specifically found he did not have a legal obligation to do, was to climb up on the roof and inspect what had been done. He's not a roofer. He's an apartment manager. Mr. Dorman going up and looking at that tarp probably would have been as productive as me climbing up that ladder and looking at that tarp. It's blue, it's pretty, and it's spread out. What do I know about securing a tarp on a roof? He reasonably relied on Tabor to do that work. And that's what 427, if it applies, that's what 427 requires. And he did everything that he was legally required to do. I think it's important that one of the specific findings that Judge Madonia made and attributed in a credibility finding on Mr. Dorman's testimony was his stuff was under that roof too. His apartment was next door to Ms. Fernandez's, and he had obviously, in addition to a professional interest, he had a personal interest in making sure that those steps were taken. What relevance, if any, does this provision in the lease that talks about her responsibility to ensure her property and basically absolves Westbrook of any liability for damage to her property, is that relevant to our inquiry here? I don't believe so. I mean, I don't think it's relevant to Westbrook's liability under 427. I think it's a warning to tenants that you should get renter's insurance to protect the valuable property that you may bring into this apartment. But I don't think it's relevant to the discussion of the application of 427. Moving to the question of damages, which is where my opposing counsel went next. Some of the very first words out of his argument to this court today referenced the day the rain came that ruined my client's things. If the rain was responsible for the damages to his client's personal property, those aren't damages then arising from a constructive eviction. Those are damages caused by Tabor's negligence, which is not attributable to my client. That's the first problem with his damages argument. The second problem with his damages argument is we have this, well, what was damaged? What was it worth? There was reference to a, there was this personal property, and I don't mean to diminish the angst that we all suffer when things, when basements or apartments or whatever get flooded and personal property is lost. But what's the financial damages? What's the economic damages? And she lumped it at $25,000. What's the source of that $25,000? There was talk of a relatively new TV. When was it bought and what did you pay for it? Some of these things can be articulated. Some of them can't be. But to simply lump everything into one and call it $25,000 is simply not convincing. The damages that, in a constructive eviction, again, the questions that were raised, I think are limited to rent issues, bond versus long as a commercial lease that involved loss of profits from being kicked out of the property for a period of time. And the other cases that are cited are nuisance and trespass cases, which were not pled in this case. This case was pled as a constructive eviction. Turning to the issue of emotional damages, which are tied both to the constructive eviction count and the intentional infliction count, we have some reference to visits to a therapist. We have no bills from a therapist. We have no reports from a therapist. We have no testimony from a therapist. There is testimony in the record that she was seeing a therapist before this event and continued to see that therapist after the event. But to prove damages either on the constructive eviction claim, if those damages are going to be allowed in this case, which they should not, or in the intentional infliction case, the requirement in the element of the cause of action of intentional infliction is severe or extreme emotional distress caused by defendant's bad actions, caused by defendant's extreme and outrageous conduct. Again, I'm sure that it was not her best day to walk into her apartment and see that the roof had leaked and there were water and buckets all over the place. That's not caused by the extreme and outrageous conduct of my client. Again, there's no connection between the damages and the behavior, which is the cause of action. Mr. Craven, let me ask you to repeat something you said in response to Justice Pope's question about the trial court awarding the rent, even though that claim had been dropped. You said, tell me again what you said you think the proper thing to do would have been. The result is correct of zero damages. The calculation was the award of damages is rent paid for which you then don't get the benefit of that rent being paid because you've been evicted constructively from the apartment. Thank you. But in this case, since the rent wasn't paid, the damages are zero. In the absence of further questions, I think I've covered the three points. I don't see any. Thank you, counsel. Any rebuttal, Mr. Hedinder? First, I'd like to say that to the extent that Mr. Craven's arguments on damages veered into the portions of the response briefs that was stricken by this court's order as not being properly before this court because there was no cross-appeal filed, I would ask the court to disregard those arguments. It sounded to me like some of the issues he was raising concerning whether there's sufficient proof, those are not arguments raised anywhere other than that stricken portion of the brief. With respect to Mr. Craven's arguments about Section 427 and its applicability to this situation, I think Mr. Craven phrases the rule as somehow – that we consider as the time of making the contract. I think that's probably correct. It has to be a foreseeable injury or foreseeable part of the work in question that at the time, whether it's part of the contract or not, the contracting parties have to have at least some ability to know that that's an issue. I certainly take exception to the suggestion, though, that when anyone, whether it's a homeowner or a commercial enterprise like Westbrook, hires roofers to come and do a multi-month job of putting roofing on facilities that they don't contemplate that at some point in that process, it's not just going to be all 24 hours a day, seven days a week. Trees are going to go off work over the weekend. We're going to have rain events. All sorts of things are going to happen, and the roof is going to have to get covered to make sure that no damage is done. So I think clearly this type of – I mean, just common sense, but I also think just the arguments that Mr. Craven was making, the arguments that are included in Westbrook's briefs, the arguments that Westbrook made at the trial court, and the trial judge's own statements all acknowledge that we all know that when it's raining and a roof isn't covered, that rain is going to get into the building. So that is certainly a danger that's inherent with the roofing process. Another suggestion or another, I think, place where Mr. Craven's understanding of Rule 427 is incorrect is he seems to suggest that there must be some sort of independent negligence or wrongdoing on the part of the owner or the principal, in this case Westbrook. Don Dorman, I mean, he was in the line of fire too, so surely he'd protect his own things. And he did the best he could. He's not an expert in roofing himself, so he stood on the ground. It looked like what they're supposed to be doing. He didn't go check. And if he had, it might not have made any difference anyway. So therefore, Westbrook did all that Westbrook could and therefore isn't liable for Tabor's. But that's not how the 427 or that kind of imputed negligence works. Westbrook, as the employer of this independent contractor, is subject to liability for physical harm caused to such others, meaning people that are reasonably foreseeably harmed by the wrong, by the contractor's failure. To take reasonable precautions against such danger. Which is the negligence issue. And it's just like responding. In fact, this is responding at Superior. An employer cannot say, well, I hired the guy that had the most training in that. I trained them every day in the morning before they go out to work to not be negligent. I watched them leave the facility as they go about to do my work. Counsel, let me stop you. But when we talk about reasonable precautions against such danger, it seems to me you want us to read that to say to prevent any such danger. And it doesn't say that. It says to take reasonable precautions. And I recognize that. And that's where I have the negligence. Because you argued that, well, obviously it wasn't reasonable because it didn't work. That doesn't seem to fly. Well, it's not that it just didn't work. It was admitted negligence. And if we didn't have the admission of negligence, as I said, we might have a different lawsuit. We might have a different trial. We might have had Tabor explaining more of what they did. We might have had more information on that point. But Westbrook admitted that what they did was done negligently. And so the question is, who's responsible for that negligence? As Justice Pope indicated, they could have third-partied in Tabor. And this trial could have been, well, if we're liable, you're liable. But that wasn't done. Or at least I don't know. Maybe there's a lawsuit pending someplace else that I'm not aware of. But the fact is that somebody was negligent here. And negligence is what creates the liability. I'm sorry, counsel. You're out of time. Thank you very much. Thank you, Judge. We'll take this matter under advisement and be in recess until the next case. Thank you. Thank you.